(41 App. Div. 21.)

PEOPLE ex rel. JEROME PARK VILLA SITE & IMPROVEMENT CO. v. ROBERTS.

(Supreme Court, Appellate Division, Third Department. May 3, 1899.)

TAXATION—CORPORATE FRANCHISES—DIVIDENDS—SURPLUS.

    The stock of a company was issued for realty which was purchased between 1867 and 1873, and leased for racing purposes. In June, 1895, the city of New York condemned it, and an award was made and paid in 1896. In 1897 the company, out of the money awarded, paid its debts, distributed a large amount among its stockholders, and took proceedings for dissolution. After the commencement of condemnation proceedings no use was made of its property, and it did no business, except as was incidental to the corporate organization. *Held,* that it was not assessable for taxes for the year ending November, 1897, under the franchise tax act (Laws 1880, c. 542), providing that certain corporations doing business in the state shall be subject to an annual tax, computed on dividends made or declared, since it was not doing business, within the act, nor was the surplus distributed a dividend "made or declared," as it resulted from an increment in the value of its realty between 1867 and June, 1895, increased by the interest on the award after June, 1895.

Certiorari by the people, on relation of the Jerome Park Villa Site & Improvement Company, against James A. Roberts, as comptroller of the state of New York, to review his determination in assessing a franchise tax against relator. Modified.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Robert E. Deyo, for relator.

G. D. B. Hasbrouck, Dep. Atty. Gen., for respondent.

LANDON, J.   The capital stock of the relator ($750,000) was issued for real estate purchased by it between September, 1867, and February, 1873.   The relator held this real estate, mainly leasing it for racing purposes, until June, 1895, when it was condemned and appropriated by the city of New York for aqueduct purposes.   Thereafter the relator made no use of the property, and did no business, except such as was incidental to its corporate organization, and to the condemnation proceedings.   These proceedings resulted in an award made July 17, 1896, of $1,011,083.50, which, with interest, was paid December 31, 1896, in the sum of $1,106,630.89.   Prior to November 1, 1897, it had made its annual reports to the comptroller under the franchise tax act of 1880 (Laws 1880, c. 542), and its amendments, and had paid the taxes as annually settled and adjusted by the comptroller; the last being upon its report for the year ending October 31, 1896.   It never declared any dividends.   On January 3, 1897, the relator, out of the money awarded and paid it for its real estate, paid its debts, $197,391.65, and distributed among its stockholders $881,250, and retained the balance, $27,989.35, and reduced its capital stock from 7,500 shares to 250 shares, and on December 9, 1897, took proceedings which resulted in the dissolution of the corporation.   In November, 1897, the relator made its annual report to the comptroller, stating its capital stock at 250 shares, of the actual value of $170 per share, or $43,500.   The comptroller caused an investigation to be made, which disclosed the above facts, and thereupon he assumed that the amount distributed among the stockholders in excess of $750,000 was a dividend; and he settled and adjusted the tax for the year ending November 17, 1897, upon a dividend of $17\frac{1}{2}$ per cent. upon the capital stock of $750,000, at the rate of $\frac{1}{4}$ mill for each per cent. of such assumed dividend, making the tax $3,281.25.   The comptroller refusing to revise and reduce it, the relator brings this certiorari.

It is clear that the relator did no corporate business, within the meaning of the franchise tax act, during the year ending November 1, 1897.   If we assume that the tax is levied for the exercise of its franchise of doing business for the year following that date, it did not exercise it.   It continued to exist, but not to exercise its franchise or do business.   It had no real estate, and was simply waiting for its money until the award was paid; and, when payment was made it paid its debts, and distributed the greater part of its money among its stockholders.   What it did was in the nature of discontinuing business, instead of "doing business," within the meaning of the act. It did not employ its capital in business.   The nature of the situation did not permit it to do so.   People v. Roberts, 30 App. Div. 180, 51 N. Y. Supp. 771, affirmed in 157 N. Y. 676, 51 N. E. 1093.   The relator's surplus above the par value of its capital stock was not in the nature of a dividend "made or declared."   It obviously resulted from the increment in the value of its real estate between 1867 and June, 1895, increased by the interest upon the award after June, 1895.   Included in this increment are the interest of the original investment, the general and franchise taxes, and local assessments paid, less the income from the property, as well as the increase in the value of the property.   What margin of profit remains is not stated.

Some of the increment may have accrued during the years before the franchise tax act became a law. As the relator never declared any dividends, and annually paid its franchise tax after 1880 upon the basis of the actual "value in cash" of its capital stock, we may assume that whatever increment there was above the par value of the capital stock entered into the basis upon which the franchise tax was annually levied. It cannot be assumed, under the circumstances, that the relator omitted to declare annual dividends, or to declare this surplus as a dividend earned, in order to evade taxes, under this act, within the hypothetical case supposed in People v. Albany Ins. Co., 92 N. Y. 458. We think the comptroller erred in assuming the surplus distributed above the authorized capital stock to be a dividend made or declared. The relator consents to a tax upon the basis of the actual cash value of its 250 shares of stock as reported by it. The tax, upon that basis, would be $63.75.

Determination of the comptroller modified by reducing the tax to $63.75, and as so modified confirmed, with costs to the relator. All concur.